**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| THOMAS E. PEREZ, Secretary of Labor, et al., | Civil Action No. 12-4450 (MAS) (DEA) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION** |
| FIRST BANKERS TRUST SERVICES, INC., et al., | |
| Defendants. | |

**SHIPP, District Judge**

This matter comes before the Court on several motions.  Plaintiff Thomas E. Perez, the Secretary of Labor, United States Department of Labor ("Plaintiff") moves to preclude the expert opinions of Bradley Van Horn, Steven Fischer, and Joel Stoesser.  (ECF Nos. 69-71.)  Defendant First Bankers Trust Services, Inc. ("FBTS") moves to preclude the expert opinion of Richard Puntillo.  (ECF No. 72.)  In addition, FBTS and Defendant Vincent DiPano ("DiPano") (collectively, "Defendants") separately move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (ECF Nos. 73, 74.)  The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1.  For the reasons stated below, Plaintiff's motion to preclude the expert opinion of Bradley Van Horn is denied without prejudice; Plaintiff's motion to preclude the expert opinion of Steven Fischer is granted in part and denied in part without prejudice; Plaintiff's motion to preclude the expert opinion of Joel Stoesser is denied without prejudice; FBTS's motion to preclude the expert

opinion of Richard Puntillo is denied without prejudice; and Defendants' motions for summary judgment are denied.

## I.    <u>Background</u>[1]

This matter arises from the SJP Group, Inc. Employee Stock Ownership Plan's (the "Plan") purchase of thirty-eight percent of the outstanding stock of SJP Group, Inc. ("SJP"), a total of 380,000 shares, from DiPano for $16 million. (Pl.'s Resp. to DiPano's Statement of Undisputed Material Facts ("DiPano's SMF") ¶ 1, ECF No. 80.) SJP is a site development construction company based in New Jersey that performs preparation work for home construction sites, including work related to underground utilities, sanitary and storm sewers, water, earth, and tree clearing, and rock crushing. (Pl.'s Resp. to FBTS's Statement of Material Facts ("FBTS's SMF") ¶¶ 8, 10, ECF No. 79.) In 2006, DiPano was the President of SJP, a member of the SJP Board of Directors, and owned seventy percent of SJP's outstanding common stock. (DiPano's SMF ¶ 5.) In the summer of 2006, DiPano was presented with various options for diversifying his investment in SJP, including an employee stock ownership plan ("ESOP") funded by employer contributions. (*Id.* ¶ 14.)

DiPano retained Duff & Phelps to represent his interests in selling a portion of his stock. (*Id.* ¶ 19.) By retention agreement dated November 16, 2006, FBTS was retained to act as a trustee for the ESOP in the purchase of DiPano's stock. (FBTS's SMF ¶ 3.) FBTS retained Prairie Capital Advisors ("Prairie Capital") to prepare a fairness opinion and a valuation report. (*Id.* ¶ 18.) On April 16, 2007, the ESOP purchased DiPano's 380,000 shares of SJP stock for $16 million (the

---

[1] As the parties disagree as to many of the facts surrounding the transaction on April 16, 2007, and the Court is denying the motions for summary judgment, only an overview of the facts of the case is provided for context.

"Transaction").  (FBTS's Resp. to Pl.'s Supplemental Statement of Material Facts ("Pl.'s FBTS SSMF") ¶ 68, ECF No. 83-1.)

Plaintiff brought this action against FBTS alleging that it failed to conduct a thorough review of the valuation, to read and understand the valuation documents, to verify that the conclusions of the valuation were consistent with the data and analyses, to verify that the valuation was internally consistent and sensible, and to hire a second valuator if warranted.  The Complaint also alleges that DiPano operated under a conflict of interest because he was simultaneously a fiduciary of the Plan and a selling shareholder who stood to gain millions of dollars by selling his shares to the Plan.  In addition, the Complaint alleges that DiPano supplied incomplete and inaccurate financial information to FBTS and Prairie Capital, including a representation in Prairie Capital's final due diligence call on April 16, 2007, that the financial condition of SJP had not materially changed since December 31, 2006.

## II.   Motions to Exclude Expert Testimony

### A.    Legal Standard

Rule 702 of the Federal Rules of Evidence governs the admissibility of testimony by an expert witness.  Pursuant to Rule 702, a witness, who qualifies as an expert, may provide testimony if the expert's scientific, technical, or specialized knowledge will assist the trier of fact if "the testimony is based on sufficient facts or data . . . , the testimony is the product of reliable principles and methods . . . , and the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.  The Third Circuit has found "that Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) (citation omitted).  The qualification requirement is interpreted broadly and means the witness possesses a specialized expertise. *Id.*

To be reliable, "the expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d Cir. 1994) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)). Finally, the expert's opinion must "fit the issues in the case" and help the trier of fact. *Schneider*, 320 F.3d at 404. "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert*, 509 U.S. at 591-92.

"[T]he district court acts as a gatekeeper, preventing opinion testimony that does not meet the requirements of qualification, reliability and fit from reaching the jury." *Schneider*, 320 F.3d at 404. The party offering the expert testimony bears the burden of establishing the existence of each factor by a preponderance of the evidence. *See In re TMI Litig.*, 193 F.3d 613, 663 (3d Cir. 1999), *amended by*, 199 F.3d 158 (3d Cir. 2000). Rule 702, however, "has a liberal policy of admissibility." *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997), *amended by*, (Dec. 12, 1997) (citation omitted). "If the expert meets [these] liberal minimum qualifications, then the level of the expert's expertise goes to credibility and weight, not admissibility." *Id.* at 809.

In the context of a bench trial, however, "it is not necessary to apply the *Daubert* standard with full force in advance of trial." *Alco Indus., Inc. v. Wachovia Corp.*, 527 F. Supp. 2d 399, 405 (E.D. Pa. 2007) (citing *In re Salem*, 465 F.3d 767, 777 (7th Cir. 2006) ("Where the gatekeeper and the factfinder are one and the same—that is, the judge—the need to make such decisions prior to hearing the testimony is lessened.")). Instead, "the court has the flexibility to allow testimony provisionally and revise its view once the testimony is taken." *Id.*

## B.    Expert Testimony of Bradley Van Horn

Plaintiff moves to exclude the testimony of Defendant FBTS's designated expert Bradley Van Horn ("Van Horn") pursuant to Rule 702 of the Federal Rules of Civil Procedure and *Daubert*. (ECF No. 69.)   FBTS retained Van Horn, President of Business Appraisal Services, LLC, to provide an opinion regarding FBTS's reliance on Prairie's valuation report of SJP.   Plaintiff argues that Van Horn's expert report should be stricken and he should be precluded from testifying in this matter because: (1) he reviewed the wrong valuation report; (2) his report does not comply with Rule 26 of the Federal Rules of Civil Procedure; (3) his opinion is not based on sufficient facts or data; and (4) his report does not use reliable principles or methodologies.   (Pl.'s Br. in Supp. of Mot. to Exclude Van Horn ("Pl.'s Br. Van Horn") 12-29, ECF No. 69-1.)   The Court will address each argument in turn.

Plaintiff first argues that Van Horn reviewed the wrong valuation report in opining on the reasonableness of FBTS's actions.   (*Id.* at 12.)   Specifically, Plaintiff argues that Van Horn should have reviewed the April 11, 2007 draft report from Prairie Capital because the final report was not completed until April 27, 2007, eleven days after the Transaction, and, therefore, FBTS could not have relied on the final report.   (*Id.* at 12-15.)   In response, FBTS argues that Plaintiff's claim centers on its conclusion that FBTS actually relied on the draft report rather than the final report because the transaction occurred on April 16, 2007, before the report was in its final and complete form.   (FBTS's Br. in Opp'n to Mot. to Exclude Van Horn ("FBTS's Br. Van Horn") 5-6, ECF No. 78.)   FBTS asserts that "[i]n the context of an ESOP transaction, it is normal for the final version of a valuation to be completed after the closing date of a transaction."   (*Id.* at 5.)   As such, FBTS argues that it was appropriate for Van Horn to review the final report in providing his expert opinion.

5

Here, the Court finds that Plaintiff's argument goes more to the weight of Van Horn's expert testimony rather than admissibility. If it is FBTS's assertion that it relied on Prairie's final report, not the draft report, than Van Horn's expert testimony properly fits the issue of the case. This does not mean that Plaintiff cannot argue and present evidence at trial that FBTS actually relied on the draft report, not the final report, or that is was unreasonable to rely on the final report. This argument, however, does not relate to the admissibility of Van Horn's report or testimony.

Plaintiff additionally argues that Van Horn's report should be excluded for its failure to comply with Rule 26 because FBTS refuses to provide Plaintiff with a list of all the facts and data considered by Van Horn. (Pl.'s Br. Van Horn 26-27.) FBTS asserts that exclusion is not warranted because it has complied with Rule 26 and made all additional disclosures to Plaintiff through correspondence dated November 21, 2014. (FBTS's Br. Van Horn 14-15.) Exclusion based on FBTS's failure to comply with Rule 26 is not warranted under these circumstances. The Court agrees with Plaintiff's alternative request; Van Horn will be precluded from testifying or citing to other documents, facts, or data not expressly identified in his expert report or FBTS's November 21, 2014 e-mail message.

Finally, Plaintiff argues that Van Horn's opinion is not supported by sufficient facts or data, because he only reviewed the final report and did not look at any deposition transcripts, correspondence, meeting memoranda, notes, or other evidence developed in this case, and his report does not use reliable principles or methodologies. As this is a bench trial, the Court is inclined to hear Van Horn's testimony and reserve ruling on these arguments until after trial. This is not to say that the Court may rule on the merits of this matter based on fundamentally flawed testimony, only that the Court will defer its ultimate decision on whether this testimony and evidence is admissible under Rule 702 until after that testimony is taken at trial.

C.     **Expert Testimony of Steven Fischer**

Plaintiff moves to exclude the testimony of Defendant FBTS's designated expert Steven

Fischer ("Fischer") pursuant to Rule 702 of the Federal Rules of Civil Procedure and *Daubert*.

(ECF No. 70.)   FBTS retained Fischer, an attorney, to provide his opinion regarding: (1) the

appropriate standard of care for ESOP trustees in mid-sized leveraged purchase transactions;

(2) the typical due diligence process employed by experienced ESOP trustees in mid-sized

leveraged minority purchase transactions; and (3) the typical scope and content of an appraisal

report prepared for ESOP trustees in mid-sized leveraged minority purchase transactions.  Plaintiff

argues that Fischer's expert report should be stricken and he should be precluded from testifying

in this matter because: (1) his opinions are impermissible legal conclusions; (2) his opinions

regarding industry, custom, and practice are not relevant; (3) his critique of Plaintiff's expert's

report lacks foundation and contains legal conclusions; and (4) his critique of the Department of

Labor's legal positions should be excluded.  (Pl.'s Br. in Supp. of Mot. to Exclude Fischer ("Pl.'s

Br. Fischer"), ECF No. 70-1.)

First, the Court agrees with Plaintiff that Fischer's expert report contains impermissible

legal arguments and conclusions.  "The district court must limit expert testimony so as to not allow

experts to opine on 'what the law required' or 'testify as to the governing law.'"  *Casper v. SMG*,

389 F. Supp. 2d 618, 621 (D.N.J. 2005) (quoting *United States v. Leo*, 941 F.2d 181, 196-97 (3d

Cir. 1991)).  Fischer's expert report regarding the "standard of care" is essentially a brief on the

background and landscape of ERISA, including statute and case citations.  Additionally, Fischer's

critique of Plaintiff's expert's report by Professor Richard Puntillo is filled with impermissible

legal conclusions.  The Court will decide the ultimate legal issues in this case and any legal opinion

FBTS would like to provide the Court should be done through proper briefing, not expert opinion.

7

Therefore, the Court will grant Plaintiff's motion in limine to exclude the report and testimony of Fischer to the extent his expert opinion concerns legal arguments and conclusions regarding the appropriate standard of care or duty to be applied in this case.

As to Plaintiff's arguments regarding the relevance of Fischer's opinions as to industry, custom, and practice and his "critique of the Department of Labor's legal positions," the Court will defer its ruling on whether this testimony and evidence is admissible under Rule 702 until after that testimony is taken at trial. The Court, however, cautions FBTS that any testimony elicited from Fischer at trial should be relevant to the issues in this case and not just his critiques of the Department of Labor.

### D.      Expert Testimony of Joel Stoesser

Plaintiff moves to exclude the testimony of Defendant DiPano's designated expert, Joel Stoesser ("Stoesser"), pursuant to Rule 702 of the Federal Rules of Civil Procedure and *Daubert*. (ECF No. 71.) DiPano retained Stoesser to provide opinions on three topics: (1) the reasonableness of the SJP's projections as contained in the Duff & Phelps memo and Prairie Capital report in light of applicable market conditions; (2) the effect that SJP's position in its real estate market had on SJP's value; and (3) the significance of financing offers by third-party lenders to the "fairness" of the transaction. Plaintiff argues that Stoesser's expert report should be stricken and he should be precluded from testifying in this matter because his opinions do not meet the minimum threshold of reliability or relevance. (Pl.'s Br. in Supp. of Mot. to Exclude Stoesser ("Pl.'s Br. Stoesser") 8, ECF No. 71-1.) Specifically, Plaintiff argues that Stoesser's opinions lack a sufficient factual foundation and are unsupported and contradicted by the evidence in this case. (*Id.* at 9-33.) In response, DiPano argues that Stoesser's testimony is relevant to the issues in this case and Plaintiff's disagreement with his opinions is not a basis for a *Daubert* challenge.

8

As the parties' arguments concern reliability and fit, the Court will defer its ruling on whether this testimony and evidence is admissible under Rule 702 until after that testimony is taken at trial and the Court can have a clearer picture of the evidence.

### E.     Expert Testimony of Richard Puntillo

Defendant FBTS moves to exclude the testimony of Plaintiff's designated expert, Richard Puntillo ("Puntillo"), pursuant to Rule 702 of the Federal Rules of Civil Procedure and *Daubert*. (ECF No. 72.)  Plaintiff retained Puntillo to express his opinion on whether he believes FBTS exercised the standard of care that a prudent buyer contemplating a similar transaction would be expected to exercise and whether FBTS acted with reasonable care and on a reasonably informed basis in conducting its due diligence investigation.  FBTS argues that Puntillo's expert report should be stricken and he should be precluded from testifying in this matter because his testimony is irrelevant to the proceedings and he seeks to improperly opine using a standard that is not applicable to this case.  (FBTS's Br. in Supp. of Mot. to Exclude Puntillo ("FBTS's Br. Puntillo") 4, ECF No. 72-1.)  Specifically, FBTS argues that Puntillo inserts a new component of materiality into the prudent man standard, which requires a more specific inquiry than that contained in ERISA.  (*Id.* at 4-6.)  Additionally, FBTS argues that Puntillo includes impermissible legal conclusions in his report regarding whether FBTS acted reasonably under ERISA.  (*Id.* at 7-8.) Lastly, FBTS challenges Puntillo's qualifications to render an expert opinion because of his lack of involvement with ERISA matters.

Puntillo is qualified to testify as an expert.  Puntillo has worked in the investment banking industry for over thirty years and has been retained as an expert on over fifty occasions to provide expert testimony and consultation in areas including investor due diligence.  (Decl. of Andrew Karonis ("Karonis Decl.") Ex A, at 3-6, ECF No. 76-2.)  Puntillo's lack of ERISA experience is

not determinative of his qualification as an expert regarding the standard of care employed by investors of closely held securities. Accordingly, the Court finds Puntillo is qualified to testify as an expert in that regard.

FBTS's two remaining arguments are intertwined and go to a central issue: the appropriate standard of care to be applied. As such, the Court will defer ruling on whether Puntillo's report and testimony is admissible under 702 until after all the evidence is taken at trial and the Court is able to rule on the legal issues.

## III.   Motions for Summary Judgment

### A.    Legal Standard

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* A dispute is genuine if there is sufficient evidentiary support such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson*, 477 U.S. at 248). The party moving for summary judgment has the initial burden of proving an absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).

To decide whether a genuine dispute of material fact exists, the Court must consider all facts, drawing all reasonable inferences in a light most favorable to the non-moving party. *Kaucher*, 455 F.3d at 423. On a motion for summary judgment, however, "the judge's function is

not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine [dispute] for trial." *Anderson*, 477 U.S. at 249.  Absent a genuine dispute for trial, summary judgment as a matter of law is proper.

### B.    ERISA Framework

Congress enacted the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, to "protect . . . the interests of participants in employee benefit plans and their beneficiaries" by setting out substantive regulatory requirements for employee benefit plans and to "provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts."  29 U.S.C. § 1001(b).  ERISA's "comprehensive legislative scheme" includes "an integrated system of procedures for enforcement."  *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985). ERISA subjects employee benefit plans to participation, funding, and vesting requirements, and to uniform standards on matters like reporting, disclosure, and fiduciary responsibility.  *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90-91 (1983).  "Under ERISA, a plan that primarily invests in the shares of stock of the employer that creates the plan is referred to as an ESOP."  *Chao v. Hall Holding Co.*, 285 F.3d 415, 425 (6th Cir. 2002).  "Even though ESOPs can be much riskier than a typical ERISA plan, the fiduciaries of [ESOP] plans are still held to their fiduciary responsibilities."  *Id.*

Section 404 of ERISA provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . [and] with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."  29 U.S.C. § 1104(a)(1)(A), (B).  Section 406 supplements an ERISA fiduciary's general duties of loyalty and prudence to the plan's

11

beneficiaries, as set forth in section 404, "by categorically barring certain transactions deemed 'likely to injure the pension plan.'" *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 241-42 (2000) (quoting *Comm'r v. Keystone Consol. Indus., Inc.*, 508 U.S. 152, 160 (1993)). Specifically, section 406 of ERISA categorically bars transactions for the purchase of employer stock on behalf of an employee benefit plan by a plan fiduciary. § 1106(a)(1)(A), (D). Section 408, however, exempts certain transactions prohibited under section 406. § 1108. Specifically, section 408(e) exempts certain transactions if the purchase of the employer stock was for "adequate consideration." § 1108(e)(1).

## C. FBTS's Motion for Summary Judgment

FBTS moves for summary judgment on Plaintiff's claim that FBTS breached its fiduciary duty in violation of section 404 and entered into a prohibited transaction in violation of section 406(a)(1)(A) and (D) that was not exempt pursuant to section 408(e). (ECF No. 73.) In support of its motion, FBTS argues that Plaintiff has the burden of proof to establish a prima facie case for breach of fiduciary duty and, in any respect, Plaintiff is concerned with the wrong issue: whether the ultimate price that was paid for the stock was correct. (FBTS's Moving Br., ECF No. 73-1.) In response, Plaintiff argues that it is FBTS that has the burden of establishing the purchase was for adequate consideration. (Pl.'s Opp'n Br., ECF No. 79-2.) Further, Plaintiff argues that there are factual disputes precluding summary judgment because the Court at this stage cannot weigh evidence and make credibility determinations.

Here, no party is contesting that the Transaction was prohibited under section 406 of ERISA. Instead, the crux of Plaintiff's case against FBTS is that FBTS purchased the stock from DiPano for more than "adequate consideration," thereby making section 408(e)'s exemption

12

inapplicable to FBTS's section 406 violation. ERISA defines "adequate consideration" as "the fair market value of the asset as determined in good faith by the trustee or named fiduciary." § 1002(18)(B). "In order to rely on the adequate consideration exemption, a trustee or fiduciary has the burden to establish that the ESOP paid no more than fair market value for the asset, and that the fair market value was determined in good faith by the fiduciary."[2] *Keach v. U.S. Trust Co.*, 419 F.3d 626, 636 (7th Cir. 2005).

"Whether a fiduciary has made a proper determination of 'fair market value' depends on whether the parties 'are well-informed about the asset and the market for that asset.' Thus, in practice, the 'fair market value' inquiry overlaps considerably with the 'good faith' inquiry; both are 'expressly focused upon the *conduct* of the fiduciaries.'" *Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 619 (2d Cir. 2006) (quoting *Donovan v. Cunningham*, 716 F.2d 1455, 1467 (5th Cir. 1983) (emphasis in original)). It is, however, the fiduciary's burden to prove that the ESOP received "adequate consideration" for its purchase of company stock by a preponderance of the evidence. *Id.* Additionally, "[a]lthough securing an independent assessment from a financial advisor or legal counsel is evidence of a thorough investigation, it is not a complete defense to a charge of imprudence." *Howard v. Shay*, 100 F.3d 1484, 1489 (9th Cir. 1996) (internal citation omitted). A fiduciary must "investigate the expert's qualifications," "provide the expert with complete and accurate information," and "make certain that reliance on the expert's advice is

---

[2] The majority of courts addressing this issue have adopted a two-part standard for evaluating the adequacy of consideration under section 408(e): (1) fair market value; and (2) good faith. *See Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 619 (2d Cir. 2006); *Chao v. Hall Holding Co.*, 285 F.3d 415, 436-37 (6th Cir. 2002); *Eyler v. Comm'r of IRS*, 88 F.3d 445, 454-55 (7th Cir. 1996); *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996); *Donovan v. Cunningham*, 716 F.2d 1455, 1467 (5th Cir. 1983). They have done so based on a 1988 Department of Labor proposed regulation that has yet to be approved for publication in the Code of Federal Regulations. *See* Proposed Regulation Relating to the Definition of Adequate Consideration, 53 Fed. Reg. 17, 632 (May 17, 1988) (to be codified at 29 C.F.R. § 2510–3(18)(b)).

reasonably justified under the circumstances." *Id.* (citing *Donovan v. Mazzola*, 716 F.2d 1226, 1234 (9th Cir. 1983), and *Donovan*, 716 F.2d at 1474).

The focus of determining adequate consideration is on the thoroughness of the fiduciary's investigation. This is inherently a fact-based and fact-specific inquiry. It requires weighing the evidence of what FBTS did and what Plaintiff thinks FBTS ought to have done. Notably, almost all of the case law relied on by FBTS in support of its motion emanates from decisions following trial or are reversals of district court's summary judgment decisions because the appellate court found that there was a genuine dispute of material fact that could not properly be decided on summary judgment. As such, the Court finds there are genuine disputes of material fact here that cannot be decided on a motion for summary judgment. Accordingly, FBTS's motion for summary judgment is denied.

### D.     DiPano's Motion for Summary Judgment[3]

DiPano moves for summary judgment on Plaintiff's claims that DiPano breached his fiduciary duty as a trustee in violation of sections 404 and 405, entered into a prohibited transaction in violation of section 406(a)(1)(A) and (D), and knowingly participated in a prohibited transaction caused by FBTS in violation of section 502(a)(5). DiPano argues he is not a fiduciary with respect to the Transaction and, thus, his "responsibility to the [Plan] as the person on the other side of the Transaction is, as one would expect, quite different and legally distinct from the responsibilities imposed on [FBTS]." (DiPano's Moving Br. 3, ECF No. 74-1.) In support of his argument, DiPano cites to the Plan trust agreement which allows the appointment of a "Special Fiduciary"

---

[3] On March 25, 2015, Plaintiff filed correspondence requesting permission to file a sur-reply and attached the proposed sur-reply. (ECF No. 88.) Defendants consented to the request. Per Local Civil Rule 7.1(d)(6), sur-replies are not permitted unless leave is granted by the Judge to whom the case is assigned. The Court will grant Plaintiff's request and consider the sur-reply in deciding this motion.

which divests the trustee of fiduciary authority. (DiPano's Reply Br. 2-3, ECF No. 87.) DiPano argues that FBTS was a "Special Fiduciary" and, thus, DiPano would not be a fiduciary for purposes of the Transaction. In response, Plaintiff argues that FBTS was engaged as an "Independent Trustee" thereby making DiPano and FBTS co-trustees for the Transaction. (Pl.'s Sur-Reply Br., ECF No. 88-1.)

There is a genuine dispute of material fact as to whether FBTS was a "Special Fiduciary" or just an "Independent Trustee." (DiPano's Resp. to Pl.'s Supplemental Statement of Material Facts ("Pl.'s DiPano SSMF") ¶ 13, ECF No. 87-1.) This dispute is material because the fiduciary status of FBTS under the Plan trust agreement plays a central role in determining whether DiPano was a fiduciary for the Transaction. "The inquiry as to whether certain [d]efendants are fiduciaries (and were acting as fiduciaries at the relevant time) is a fact-sensitive one." *In re Schering-Plough ERISA Litig.*, No. 08-1432, 2010 WL 2667414, at *9 (D.N.J. June 29, 2010). Furthermore, the standard to be applied to DiPano's actions necessarily depends on whether he was a fiduciary. Therefore, the Court finds there are genuine disputes of material fact that cannot be decided on a motion for summary judgment. Accordingly, DiPano's motion for summary judgment is denied.

**IV.    Conclusion**

For the reasons set forth above, Plaintiff's motion to preclude the expert opinion of Bradley Van Horn is denied without prejudice; Plaintiff's motion to preclude the expert opinion of Steven Fischer is granted in part and denied in part without prejudice; Plaintiff's motion to preclude the expert opinion of Joel Stoesser is denied without prejudice; FBTS's motion to preclude the expert

opinion of Richard Puntillo is denied without prejudice; and Defendants' motions for summary

judgment are denied. An order consistent with this Memorandum Opinion will be entered.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: September 29th, 2015

16